# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:12-PO-54 |
| Plaintiff, | | Magistrate Judge Michael J. Newman |
| -vs- | : | |
| THOMAS WILLIS, | | |
| Defendant. | : | |

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS (DOC. 10)

This matter is before the Court upon Defendant Thomas Willis's motion to suppress (doc. 10) and the United States' memorandum in opposition (doc. 11). The Court held a suppression hearing on August 29, 2012. Special Assistant U.S. Attorney Julienne McCammon appeared on behalf of the United States, and Assistant Federal Public Defender F. Arthur Mullins appeared on behalf of Defendant.

### I. Facts

On March 16, 2012, Defendant was traveling on Airway Road near Dayton, Ohio (an area of concurrent federal jurisdiction). Doc. 13 at PageID 37. A vehicle carrying four to five passengers, including Defendant, passed Technical Sergeant Esposito ("TSgt. Esposito") – a member of the Security Forces Squadron at Wright-Patterson Air Force Base – standing on the side of the road issuing a traffic ticket to another driver. *Id.* at PageID 30, 37-38. As Defendant's vehicle passed by, TSgt. Esposito claims he heard unidentifiable yelling out the window.[1] *See id.*

---

[1] TSgt. Esposito looked up at Defendant's passing vehicle, but was not harmed in any way.

at PageID 38. Based solely on that yelling, TSgt. Esposito requested a back-up patrol car to pursue and stop Defendant's vehicle. *See id.* Relying on evidence obtained during the traffic stop, the government charged Defendant with operating a vehicle under the influence of alcohol and disorderly conduct.[2] *See* doc. 2.

At the suppression hearing, TSgt. Esposito testified as follows:

> [TSgt. Esposito]: On the night of March 16 at 2:30 roughly I was on a traffic stop when I stopped an individual for speeding. At that time I was talking with the individual by his window and Mr. Willis had driven by yelling out of the window. About that same time, Airman Dennison and Airman Tiffany pulled up and I instructed them to initiate a traffic stop on Willis for yelling out of the vehicle.
> At that time I was not aware of what was or what exactly was yelled or why he yelled out of the vehicle, but it made me look up and wonder what was going on. So I had them initiate a stop on that vehicle.
>
> . . . .
>
> [Special Assistant U.S. Attorney Julienne McCammon]: In your experience since 1999 working traffic stops, how usual is it to have someone unconnected to a traffic stop scream stuff out the window or yell stuff out the window at you in your role as a citing officer?
> [TSgt. Esposito]: Very unusual, ma'am.
> [Ms. McCammon]: So would you consider that an unusual driving practice --
> [TSgt. Esposito]: Yes, ma'am.
> [Ms. McCammon]: -- or unusual driving condition? In your experience and training as someone who has worked for years on the mid shift of patrolling for security forces, what possible offense did you think might have been committed when the defendant in this case drove by and yelled out the window?
> [TSgt. Esposito]: That he was probably intoxicated.
> [Ms. McCammon]: And why would you base it on that?
> [TSgt. Esposito]: A normal civil driver doesn't yell out a window at 2:30 in the morning at a cop on a traffic stop.
> [Ms. McCammon]: So you had reason to believe that either his behavior was unusual or reason to believe that he had been drinking and was driving while impaired?
> [TSgt. Esposito]: Yes, ma'am.

---

[2] The disorderly conduct charge under Ohio Revised Code § 2917.11(B)(2) is premised on Defendant being intoxicated. It is important to note that Defendant's intoxication was not evident until after the traffic stop.

> [Ms. McCammon]: Did you see any other indicators of impairment other than that?
> [TSgt. Esposito]: No, ma'am.

Doc. 13 at PageID 37-38, 42-43.

## II. Analysis

An ordinary traffic stop is a "seizure" within the meaning of the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). "[A] police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Id.* Here, the government does not claim there was probable cause to believe that Defendant committed a civil traffic violation. Rather, it attempts to justify Defendant's traffic stop by arguing that TSgt. Esposito had reasonable suspicion that Defendant was committing a crime – *i.e.,* driving under the influence of alcohol and/or disorderly conduct (specifically, presenting a risk of physical harm to TSgt. Esposito while voluntarily intoxicated, *see* Ohio Rev. Code § 2917.11(B)(2)) – based on the yelling from the vehicle.

The Sixth Circuit has described the reasonable suspicion standard as follows:

> Although less demanding than the probable-cause standard, the reasonable-suspicion standard still "requires more than a mere hunch." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008) (internal quotation marks omitted). It "requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [a traffic stop]." *United States v. Ellis*, 497 F.3d 606, 612-13 (6th Cir. 2007) (internal quotation marks omitted). In conducting a reasonable-suspicion analysis, "[r]eviewing courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing," while bearing in mind that officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.* at 613 (internal quotation marks omitted). This totality-of-the-circumstances inquiry requires courts to "determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when

examined separately." *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (internal quotation marks omitted).

*Green v. Throckmorton*, 681 F.3d 853, 860-61 (6th Cir. 2012). An officer does not have reasonable suspicion that a crime has been committed based solely on the time of day and/or an individual's presence in a high crime area. *See Hoover v. Walsh*, 682 F.3d 481, 495 (6th Cir. 2012); *United States v. Keith*, 559 F.3d 499, 506 (6th Cir. 2009). Thus, the mere fact – that Defendant was driving at 2:30 a.m. in an area near bars – does not create a reasonable suspicion of criminal activity. Further, there is no evidence that Defendant drove unusually or erratically – *i.e.,* swerving, frequently braking, or driving unusually slow – which may be legal justification for initiating a traffic stop.[3] *See Watkins v. City of Southfield*, 221 F.3d 883, 888 (6th Cir. 2000).

Here, the Court finds that Defendant's traffic stop was an unlawful seizure. By TSgt. Esposito's own admission, he initiated the traffic stop based entirely on the yelling out of the vehicle's window as it passed by, and nothing else. *See* doc. 13 at PageID 42-43. Contrary to the government's argument, the Court does not characterize the yelling as unusual *driving*, but rather as unusual *behavior*. Under the particular facts of this case, yelling out a car window by itself does not amount to reasonable suspicion of either (1) disorderly conduct (which, under the statute charged, requires proof of intoxication); or (2) operating a vehicle under the influence of alcohol. Accordingly, the Court **GRANTS** Defendant's motion to suppress all evidence seized by the government, including any statements made, as a result of the unlawful traffic stop (doc. 10).

September 7, 2012                                       s/ **Michael J. Newman**
                                                        United States Magistrate Judge

---

[3] The government cites to *State v. Hatch*, No. 24870, 2010 WL 99265 (Ohio Ct. App. Jan. 13, 2010), as support that "unusual driving" creates a reasonable suspicion of criminality under Ohio law. The Court finds that case is inapposite. The government does not cite to any case suggesting that yelling from a passing car by itself creates a reasonable suspicion of criminal activity.